**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID W. LAMONT**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN F. GIRVIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 87A01-1208-CR-381 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Keith A. Meier, Judge
Cause No. 87D01-1010-FA-173

**April 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

John Girvin appeals his convictions for child molesting, as a Class A felony, and vicarious sexual gratification, as a Class B felony, following a jury trial. Girvin presents the following restated, consolidated, and reordered issues for our review:

1. Whether the trial court abused its discretion when it denied his motion to dismiss.

2. Whether his convictions violate the prohibition against double jeopardy.

3. Whether the State presented sufficient evidence to support his convictions.

4. Whether he was denied the effective assistance of trial counsel.

5. Whether the trial court abused its discretion when it instructed the jury.

6. Whether the trial court erred when it did not advise him of his right to testify.

7. Whether the trial court erred when it determined that he is a credit restricted felon.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

In approximately 2000 or 2001, C.F., who was born in 1990, was friends with eight-year-old A.G., Girvin's son. C.F. occasionally stayed overnight with Girvin, his wife, Kelly, and A.G. One night, after A.G. had gone to sleep, C.F. stayed up and watched a movie with Girvin and Kelly. C.F., Girvin, and Kelly were lying on the living room floor when Girvin asked C.F. whether he wanted to see Kelly's breasts. C.F. responded affirmatively, and Girvin pulled up Kelly's shirt to expose her breasts. Girvin

2

then began fondling Kelly's breasts and asked C.F. whether he wanted to fondle her breasts, too, which C.F. proceeded to do.

One week later, C.F. again spent the night at Girvin's home. Girvin fondled Kelly's breasts in front of C.F. and invited C.F. to join him in the fondling, which he did. Then Girvin asked C.F. whether he would like to see Kelly's vagina, and he responded affirmatively. Girvin then pulled down Kelly's pants and exposed her vagina. Girvin then inserted his finger inside Kelly's vagina and asked C.F. whether he wanted to do the same, but C.F. declined.

One week later, Girvin asked C.F. whether he wanted to see Kelly's breasts. C.F. replied affirmatively, and Girvin pulled up Kelly's shirt to expose her breasts. Girvin fondled Kelly's breasts and asked C.F. whether he wanted to fondle them, which C.F. proceeded to do. Girvin then pulled down Kelly's pants and began "playing with her vagina." Transcript at 244. C.F. again declined Girvin's invitation to touch Kelly's vagina. But Girvin then told C.F. that he could put Kelly's hand on C.F.'s penis while C.F. fondled Kelly's breasts, and C.F. proceeded to do that. At the same time, Kelly was "playing with" Girvin's penis with her other hand. Id. at 245. Both C.F. and Girvin had erections.

One week later, C.F. and Girvin were fondling Kelly's breasts and she was touching their penises when Girvin suggested that C.F. "scoot up a little bit if [he] wanted to and [Kelly] would put her mouth on [C.F.'s] penis." Id. at 246. C.F. proceeded to do that, and Kelly performed oral sex on C.F. while she had her hand on Gervin's penis and

3

while Girvin watched.  On occasion after these events, Girvin told C.F., "Don't tell anybody about it.  We could get in trouble."  Id. at 248.

A few months later, C.F. told his best friend about these events.  But he did not tell anyone else until several years later when Warrick County Sheriff's Detective Paul Kruse, who had already talked to Girvin, asked C.F. to describe the molestations.  On October 20, 2010, the State charged Girvin with child molesting, as a Class A felony.  On November 1, the State moved to amend the information to add a second charge of vicarious sexual gratification, as a Class B felony.  And on November 10, Girvin moved to dismiss the child molesting charge for lack of probable cause.  The trial court granted the State's motion to amend information and denied Girvin's motion to dismiss.  A jury found Girvin guilty as charged, and the trial court entered judgment and sentence accordingly.  This appeal ensued.

## DISCUSSION AND DECISION

### Issue One:  Motion to Dismiss

Girvin first contends that the trial court abused its discretion when it denied his motion to dismiss the charging information "for lack of probable cause."  Appellant's App. at 26.  We review the trial court's denial of Girvin's motion to dismiss for an abuse of discretion.  See Thompson v. State, 966 N.E.2d 112, 117 (Ind. Ct. App. 2012).  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court misinterprets the law.  Id.

Our supreme court has held that lack of probable cause is not grounds for dismissing a charging information. Flowers v. State, 738 N.E.2d 1051, 1055 (Ind. 2000). Regardless, here, our review of the charging information shows that it is supported by sufficient probable cause. The "Reporting Officer Narrative" indicates that Girvin admitted to having participated in various sexual acts with Kelly and C.F. It is well settled that one may be charged as a principal yet convicted on proof that he aided another in the commission of a crime. Laney v. State, 868 N.E.2d 561, 565-66 (Ind. Ct. App. 2007), trans. denied. Thus, here, the trial court did not abuse its discretion when it denied Girvin's motion to dismiss. Further, to the extent Girvin asserts other arguments in support of his motion to dismiss on appeal, he did not raise those issues to the trial court.[1] It is well settled that a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). Girvin cannot prevail on this issue.

### Issue Two: Double Jeopardy

Girvin next contends that his convictions violate Article I, Section 14 of the Indiana Constitution, and the State agrees. In Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999), our supreme court set out a two-pronged "same offense" test for determining double jeopardy violations under the Indiana Constitution. The court held that

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the

---

[1] We also note that Girvin asserted additional arguments in support of his motion to dismiss to the trial court which he does not reassert on appeal.

5

essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

Id. at 49-50 (emphases in original).

Under the actual evidence test, we examine the actual evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. Moore v. State, 882 N.E.2d 788, 794 (Ind. Ct. App. 2008). To prove a violation, a defendant must show "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. (quoting Smith v. State, 872 N.E.2d 169, 176 (Ind. Ct. App. 2007), trans. denied). Double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Id.

Here, to prove that Girvin was Kelly's accomplice in molesting C.F., the State had to show that Girvin aided Kelly in performing deviate sexual conduct with C.F., who was under the age of fourteen, with the intent to arouse or satisfy the sexual desires of either himself or C.F. See Ind. Code § 35-42-4-3. And to prove vicarious sexual gratification, the State had to show that Girvin knowingly directed, aided, induced, or caused C.F., a child under the age of fourteen, to engage in deviate sexual conduct with another person. See Ind. Code § 35-42-4-5. Girvin maintains that the State used the same evidence, namely, his aiding Kelly in a single instance of criminal deviate conduct, to support the essential elements of both convictions. The State concedes that "both charges were based

6

on Girvin aiding or inducing Kelly to commit criminal deviate sexual conduct with C.F." Brief of Appellee at 20. And the State points out that "[t]here was no allegation in the charging information or closing argument that there was more than one act of deviate sexual conduct." Id. Indeed, our review of the evidence shows that the same evidentiary facts had to have been used by the jury to establish the essential elements of both crimes. Accordingly, we vacate Girvin's conviction for vicarious sexual gratification. See Richardson, 717 N.E.2d at 55 (vacating conviction with less severe penal consequences where double jeopardy violation found).

### Issue Three: Sufficiency of the Evidence

Girvin contends that the State presented insufficient evidence to support his convictions. Because we vacate his vicarious sexual gratification conviction, we need only address his contention with respect to his child molesting conviction. When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

Again, to prove Girvin's accomplice liability for child molesting, the State was required to show that Girvin was at least twenty-one years old and knowingly or

7

intentionally aided, induced, or caused Kelly to perform deviate sexual conduct with C.F., who was less than fourteen years old, with the intent to arouse or satisfy the sexual desires of either himself or C.F. See Ind. Code §§ 35-42-4-3, 35-41-2-4. Girvin contends that the evidence is insufficient to prove that he and Kelly were at least twenty-one years old at the time of the alleged offense. And he also contends that the evidence is insufficient to prove that he knowingly or intentionally aided, induced, or caused Kelly to perform deviate sexual conduct with C.F. We address each contention in turn.

Girvin is correct that the State did not present any evidence showing Kelly's age. But that evidence was not required to convict Girvin as her accomplice. Girvin's conviction is independent of Kelly's prosecution or conviction for child molesting. See Ind. Code § 35-41-2-4. And the State presented circumstantial evidence sufficient to prove that Girvin was at least twenty-one years old at the time of the offense. First, the jury observed Girvin during trial and could reasonably infer that he was over the age of twenty-one. Second, Girvin testified that he was twenty years older than Kelly, who is his wife. Finally, Girvin and Kelly have a child together who was eight years old at the time of the offenses. We hold that the evidence is sufficient to prove that Girvin was at least twenty-one years old at the time of the offense. See, e.g., Rowe v. State, 867 N.E.2d 262, 266-67 (Ind. Ct. App. 2007).

Next, Girvin maintains that the evidence is insufficient to prove that he aided, induced, or caused Kelly to perform deviate sexual conduct with C.F. In determining whether a person aided another in the commission of a crime, our supreme court has long considered the following four factors: (1) presence at the scene of the crime; (2)

8

companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. Vandivier v. State, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005) (citing Garland v. State, 788 N.E.2d 425, 431 (Ind. 2003)), trans. denied. While the defendant's presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. Id. (citing Hodge v. State, 688 N.E.2d 1246, 1248 (Ind. 1997)). In order to sustain a conviction as an accomplice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may reasonably be drawn. Id. (citing Peterson v. State, 699 N.E.2d 701, 706 (Ind. Ct. App. 1998)).

The State presented evidence that Girvin orchestrated almost every aspect of Kelly's conduct leading up to, and including, the deviate sexual conduct with C.F. It was Girvin who asked C.F. whether he wanted to see Kelly's breasts and lifted her shirt to expose them when C.F. responded affirmatively. And Girvin told C.F. that he could "scoot up a little bit" if C.F. wanted Kelly to put her mouth on C.F.'s penis. Transcript at 246. And Girvin watched while Kelly performed oral sex on C.F., and Kelly had her hand on Gervin's erect penis simultaneously. On occasion after these events, Girvin told C.F., "Don't tell anybody about it. We could get in trouble." Id. at 248. Girvin's contention on this issue amounts to a request that we reweigh the evidence, which we will

9

not do.  We hold that the evidence is sufficient to support Girvin's conviction for child molesting, as a Class A felony.

## Issue Four:  Effective Assistance of Trial Counsel

Girvin contends that he was denied the effective assistance of trial counsel.  In particular, he maintains that his trial counsel was ineffective in the following ways:  he opened the door to prejudicial evidence; he stipulated to the admission of the video statement he made to Detective Kruse; he did not proffer final jury instructions; and he did not object to several of the final instructions tendered to the jury.  We address each contention in turn.

A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984).  First, the defendant must show deficient performance:  representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment.  Id. at 687-88.  Second, the defendant must show prejudice:  a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 694.

Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.  Reed v. State, 866 N.E.2d 767, 769 (Ind. 2007).  Moreover, because counsel is afforded considerable discretion in choosing strategy and tactics, a strong presumption arises that counsel rendered adequate

assistance.  Id.  The selection of a defense theory is a matter of trial strategy.  Benefield v.

State, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011).

## Prejudicial Evidence

In addition to the incident of deviate sexual conduct that occurred at the Girvins'

house in Warrick County, Kelly and C.F. had sexual intercourse on one occasion at a

hotel in Vanderburgh County.  But defense counsel and the State agreed that C.F. would

only testify to events that occurred in Warrick County.  Despite that agreement, on cross-

examination of C.F., defense counsel asked C.F. whether he had had sexual intercourse

with Kelly, and he responded affirmatively.  Then, on redirect examination of C.F., the

following colloquy occurred:

> STATE:  Where did you have sex the one time when [Girvin] wasn't present?
> C.F.:  It was at the Studio's Inn in Vanderburgh County.
> \* \* \*
> [Girvin] dropped us [C.F. and Kelly] off there.  He had come—they had—[Girvin] and Kelly had came and picked me up from my house in Warrick County, and he had dropped me and Kelly off there at the Studio's Inn.
> \* \* \*
> STATE:  Did anyone tell you that it was, that suggested to you to have sex with Kelly?
> C.F.:  Yes.
> STATE:  Who?
> C.F.:  John Girvin.
> STATE:  What did he say?
> C.F.:  That he was going to be taking us to a hotel and that I could have sex with her if I wanted to.

Transcript at 256-57.  At that point, defense counsel objected to the line of questioning,

and the trial court sustained the objection.

11

On appeal, Girvin maintains that it "was not reasonable trial strategy or an inadvertent error for trial counsel to open the door to substantial inadmissible evidence against Girvin. Girvin was prejudiced by this error, and this error undermines the confidence of a reasonable person in the jury's verdicts." Brief of Appellant at 15. But we agree with the State that defense counsel's question was "consistent with trial counsel's presumed strategy, [namely], that Kelly was involved in the criminal activity with C.F. on her own, and not with Girvin's assistance." Brief of Appellee at 14. Indeed, the context of defense counsel's question to C.F. on cross-examination supports that determination. The full colloquy is here:

| | |
|---|---|
| DEFENSE COUNSEL: | Now, at no time during any of these events that you've described to this jury did John Girvin touch you, did he? |
| C.F.: | No. |
| DEFENSE COUNSEL: | And if the Prosecuting Attorney's office of this county stated that John Girvin had sexual intercourse with you, that wouldn't be true, would it? |
| C.F.: | No. |
| DEFENSE COUNSEL: | You had sexual intercourse with Kelly Girvin, didn't you? |
| C.F.: | Yes. |
| DEFENSE COUNSEL: | Now, you've described these events. Was Kelly participating in these things with the two of you? |
| C.F.: | Yes. |
| DEFENSE COUNSEL: | Did she engage in contact and touching you? |
| C.F.: | Yes. |
| DEFENSE COUNSEL: | This was not all [Girvin's] idea, was it? |
| C.F.: | I don't believe so. |
| DEFENSE COUNSEL: | And I think there was a time that you did have sex with Kelly when [Girvin] wasn't present, isn't that correct? |
| C.F.: | Yes. |

DEFENSE COUNSEL:    So there would be times that you'd have this contact with Kelly and [Girvin] wasn't always there, was he?

C.F.:    One time.

Transcript at 254-55. Our supreme court has held that the method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance. Kubsch v. State, 934 N.E.2d 1138, 1151 (Ind. 2010). We hold that Girvin has not demonstrated that his counsel's performance was deficient on the basis of questioning C.F. about the sexual intercourse with Kelly.

Stipulated Evidence

Girvin next contends that his trial counsel should not have stipulated to the admission of a portion of his videotaped statement to police. But Girvin does not make any cogent argument suggesting that that evidence was inadmissible. Accordingly, Girvin cannot demonstrate that he was denied the effective assistance of trial counsel on this basis.

Final Jury Instructions

Girvin makes several contentions regarding defense counsel's alleged errors with respect to the final jury instructions. First, Girvin challenges defense counsel's failure to proffer final instructions on accomplice liability and the presumption of innocence. But Girvin cannot demonstrate any prejudice as a result of those alleged errors. The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Lee v. Hamilton, 841 N.E.2d 223, 230 (Ind. Ct. App. 2006). Here, the trial court properly instructed the jury on accomplice liability and the

13

presumption of innocence. Girvin has not made cogent argument demonstrating that the given instructions were deficient or that had his counsel proffered different instructions the outcome of the trial would have been different. We hold that Girvin's counsel was not ineffective in not proffering instructions on accomplice liability and the presumption of innocence.

Girvin next contends that his counsel was deficient for failing to object to several of the final instructions tendered to the jury. In order to establish that counsel's failure to object to a jury instruction was ineffective assistance of counsel, a defendant must first prove that a proper objection would have been sustained. Potter v. State, 684 N.E.2d 1127, 1132 (Ind. 1997). Furthermore, defendant must prove that the failure to object was unreasonable and resulted in sufficient prejudice such that there exists a reasonable probability the outcome would have been different. Id.

When reviewing a challenge to a jury instruction, we will consider whether the instruction is a correct statement of law, whether there was evidence in the record to support giving the instruction, and whether the substance of the instruction is covered by other instructions given by the court. Hubbard v. State, 742 N.E.2d 919, 921 (Ind. 2001). "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Snell v. State, 866 N.E.2d 392, 396 (Ind. Ct. App. 2007). However, "an error in the giving or refusing of an instruction is harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Id. at 399.

14

Here, Girvin first challenges the propriety of the final instructions numbered 4, 5, 6, and 11, which, he contends, each refer to "sexual intercourse." Girvin maintains that, because neither of the charges against him was based on an allegation of sexual intercourse, the giving of these instructions was "a blatant violation of basic due process that created evidence not in the record, incorrectly informed the jury as to the facts and the law, enhanced the charges against Girvin and prejudiced Girvin to the extent that his trial was unfair." Brief of Appellant at 24. But Instruction No. 4 explicitly states: "You heard evidence from [C.F.] that an incident of sexual intercourse occurred at a motel. You should not find the defendant guilty based on evidence related to that incident." Appellant's App. at 123. Girvin cannot show that he was prejudiced by that instruction. Instruction No. 5 refers to sexual intercourse in setting out the elements of child molesting. In particular, the instruction states in relevant part that to convict Girvin of that offense, the State had to prove that he knowingly performed or submitted to sexual intercourse or deviate sexual conduct with C.F. Girvin cannot show prejudice as a result of that instruction.

Instruction No. 6 states:

The Defendant is accused in Count 1 of having committed Child Molesting against [C.F.] between 2000 and 2001.

The State has presented evidence that the Defendant may have committed more than one act of Child Molesting against [C.F.] between 2000 and 2001. Before you may find the Defendant guilty, you must all unanimously find and agree that the State proved beyond a reasonable doubt the Defendant committed the same specific, single act of Child Molesting against [C.F.] between 2000 and 2001.

If you find the Defendant guilty, your verdict does not have to specify the particular act of Child Molesting Defendant committed.

15

Id. at 125. And Instruction No. 9 is identical to Instruction No. 6, but No. 9 addresses the vicarious sexual gratification charge. These instructions appear to have been designed to preempt any confusion regarding the import of C.F.'s testimony that Girvin told him that he could have sex with Kelly when he dropped C.F. off at the hotel in Vanderburgh County. But reading these two instructions along with Instruction No. 4, which prohibits a finding of guilt based upon that testimony, we cannot say that Girvin was prejudiced by these instructions.

Instruction No. 11 merely defines sexual intercourse, which was relevant to the jury's consideration of the evidence supporting the evidence of child molesting. While the State concedes that evidence of sexual intercourse was not presented in support of either charge against Girvin at trial, the definition was useful to the jury in distinguishing sexual intercourse from deviate sexual conduct. Girvin cannot show any prejudice as a result of this instruction having been tendered.

Girvin also challenges the propriety of Instruction No. 22, which states: "No Defendant may be compelled to testify. A defendant has no obligation to testify. The Defendant did not testify. You must not consider this in any way." Appellant's App. at 142. Girvin maintains that this instruction drew "unwarranted attention to [his] right not to testify." Brief of Appellant at 25. But the instruction is a correct statement of the law and would not have been misleading in any way to the jury. Girvin cannot show prejudice as a result of this instruction.

Finally, Instruction No. 23 states: "Some evidence was presented through a video tape. It is your duty to decide the value you give to this evidence. The significance of

16

this evidence should be determined in the same manner other evidence is evaluated." Appellant's App. at 143. Girvin contends that the instruction "places specific emphasis on evidence presented to the jury" in his videotaped statement to police. Brief of Appellant at 25. But, again, the instruction is a correct statement of the law and would not have misled the jury. Girvin cannot show prejudice as a result of this instruction.

In sum, Girvin has not demonstrated that his trial counsel's performance was deficient or that he was prejudiced to the extent that the outcome of his trial would have been different had his counsel not committed the alleged errors. We hold that Girvin was not denied the effective assistance of trial counsel.

**Issue Five: Jury Instructions**

Girvin contends that the trial court abused its discretion when it tendered final instructions to the jury. We review a trial court's decision on how to instruct a jury for abuse of discretion. Treadway v. State, 924 N.E.2d 621, 636 (Ind. 2010). And, again, when reviewing a challenge to a jury instruction, we will consider whether the instruction is a correct statement of law, whether there was evidence in the record to support giving the instruction, and whether the substance of the instruction is covered by other instructions given by the court. Hubbard, 742 N.E.2d at 921.

Girvin first asserts that the trial court abused its discretion when it gave Instruction No. 7 over his objection. That instruction reads as follows:

> Mere presence at the scene of the crime, coupled with knowledge that a crime is being committed is insufficient to establish guilt. Further acquiescence in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding, inducing, or causing a crime.

17

To convict a Defendant because he aided, induced or caused a crime, you must find, beyond a reasonable doubt, that he knowingly or intentionally participated in some conduct of an affirmative nature.

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense, commits that offense, even if the other person:

1. Has not been prosecuted for the offense;

2. Has not been convicted of the offense; or

3. Has been acquitted of the offense.

There is no distinction between the criminal responsibility of a principal and that of an accomplice.

To convict a defendant of any crime on an accomplice theory, that is aiding, inducing, or causing a crime, the State must prove beyond a reasonable doubt that the defendant intended by his own voluntary conduct to cause or facilitate commission of the particular crime committed by the principal offender.

A person is responsible for the actions of another person when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of a crime.

In order to be held responsible for the actions of another, he need only have knowledge that he is helping in the commission of a crime. He does not have to personally participate in the crime nor does he have to be present when the crime is committed.

Proof of a defendant's failure to oppose the commission of a crime, companionship with the person committing the offense, and conduct before, during and after the offense may be considered in determining whether aiding may be inferred.

Appellant's App. at 126-27.

At trial, Girvin objected to this instruction on the basis of an alleged lack of evidence to support giving the instruction. But because we hold that the evidence is sufficient to support Girvin's conviction as an accomplice to child molesting, Girvin cannot prevail on this issue. Girvin makes no contention that the instruction is an incorrect statement of the law or is adequately covered by other instructions. The trial court did not abuse its discretion when it tendered Instruction No. 7.

18

Girvin also contends that the trial court committed fundamental error when it gave Instructions 4, 5, 6, 9, 11, 22, and 23. But, as we explained in Issue Four, Girvin cannot show that he was prejudiced by any of those instructions. Girvin cannot demonstrate fundamental error on this issue.

## Issue Six:  Right to Testify

Girvin contends that the trial court erred when it did not advise him that he had a right to testify under both the federal and state constitutions. But the State correctly points out that "a trial court judge has no affirmative duty to insure that a defendant represented by counsel knowingly and intelligently waived his right to testify at trial." Vanzandt v. State, 730 N.E.2d 721, 723 (Ind. Ct. App. 2000). A trial court is entitled to presume that a lawyer and his client have discussed the possibility of testifying. Id. Thus, Girvin's contention on this issue is without merit.

## Issue Seven:  Credit Restricted Felon

Finally, Girvin contends, and the State agrees, that the trial court erred when it found that Girvin is a "Credit Restricted Felon and therefore not entitled to class one credit time." Appellant's App. at 152. Indiana Code Section 35-41-1-5.5 defines a "credit restricted felon" as a person who has been convicted of child molesting involving sexual intercourse or deviate sexual conduct if the offender is at least twenty-one years old and the victim is less than twelve years old. And Indiana Code Section 35-50-6-4(b) provides that a credit restricted felon "may not be assigned to Class I or Class II" credit time. The credit restricted felon statute took effect on July 1, 2008 and applies "'only to persons convicted after June 30, 2008.'" See Gaby v. State, 949 N.E.2d 870, 882 (Ind.

19

Ct. App. 2011) (quoting Upton v. State, 904 N.E.2d 700, 704 (Ind. Ct. App. 2009), trans. denied). But in Upton, we concluded that retroactive application of the credit restricted felon statute to a defendant who committed an offense before the effective date of the statute was an ex post facto violation even though he was convicted after the effective date of the statute. Gaby, 949 N.E.2d at 883. Accordingly, the credit restricted felon statute does not apply to Girvin, who committed the instant offense in 2000 or 2001. We remand with instructions to the trial court to revise Girvin's sentence accordingly.

**Conclusion**

In sum, the trial court did not abuse its discretion when it denied Girvin's motion to dismiss. We hold that Girvin's convictions violate the prohibition against double jeopardy. On remand, the trial court shall vacate his conviction for vicarious sexual gratification. The State presented sufficient evidence to support Girvin's child molesting conviction. Girvin was not denied the effective assistance of trial counsel. The trial court did not abuse its discretion when it tendered Instruction No. 7 over Girvin's objection, and the court did not commit fundamental error in instructing the jury, overall. The trial court did not have an obligation to advise Girvin of his right to testify at trial. And the trial court erred when it found that Girvin was a credit restricted felon. The trial court shall revise Girvin's sentence with respect to credit time accordingly.

Affirmed in part, reversed in part, and remanded with instructions.

BAILEY, J., and BARNES, J., concur.

20